This video is a derivative work of the Council on Security and the National Security Council.   Security is a security issue in the United States, and it is not a matter of the state or the federation. That central issue is an element of every claim pleaded in the operative complaint. Accordingly, it was incumbent on the trial court below to rigorously analyze the law and the record evidence to determine if that central issue could be proved in a common way, or whether instead, at a trial, individual issues as to valuation would predominate over any common issues. The district court abused its discretion in certifying the class because it failed to rigorously and properly analyze this issue. And in particular, the court erred in two significant ways. First, the district court erred by failing to analyze and resolve a key threshold legal question that is directly relevant to the class certification question here. The parties disagree as to whether a vehicle's pre-loss condition may be taken into account, must be taken into account, in determining its value at the time of the loss. Plaintiffs argue that under a Louisiana statute, condition may not be considered. Defendants take the opposite position. This is a central question, legal question, relevant to class certification, because if condition is required, the individual condition of a vehicle is required to be taken into account, or at least may be taken into account, then the plaintiffs would have to come forward now with a common methodology to address that issue for all claimants. And that would have to be analyzed and resolved by the district court now to determine the class . . . I don't understand. You're saying the plaintiffs would have to come forward with a common methodology to address what? The issue of the condition, the pre-loss condition of each class member's vehicle. Well, your client has a common methodology for addressing it, don't you? We have a methodology. You have a formula for determining the value, and one of the elements of that formula is that you consider the pre-loss condition of the vehicle. That's correct, Your Honor. Our formula requires our adjusters to individually inspect each vehicle and to evaluate the condition of the vehicle individually, and then based on that evaluation, make an adjustment to the valuation of the vehicle. We do have that approach. And so the putative class members have a complaint about that formula, right? They do, Your Honor. That's common as among all the class members, the nature of their complaint? Yes, Your Honor. All right. And so the question is, the plaintiffs are proposing a different methodology. They say the methodology Progressive uses is arbitrary and capricious and violates the law, both our determination of base value and our application of a condition adjustment, and they think we should use a different methodology. And my point is, if under the law the condition needs to be taken into account of each vehicle, the plaintiffs have to show now, not plead, but show now that there is a common methodology they could use using their methodology to take individual vehicle condition into account. The second error that the Court made below is that the Court didn't require the plaintiffs. The district judge didn't really disagree with you that law before the 2010 amendments and even any reading of the statute now does allow for adjustment based on existing conditions, right? The district court didn't say, imply in any way that that's wrong. Judge Higginson, the district court did not imply that's wrong. The district court just simply didn't decide that issue, left it undecided, and only addressed condition and how it would be addressed in one single sentence in its order, which didn't evaluate any methodology. And the reason the Court didn't rigorously address any methodology to address that issue is because the plaintiffs did not propose one. Instead, the plaintiffs relied below on what they call the data expert, who is essentially someone who can confirm how to enter data and process it. And that data expert said, if condition has to be taken into account and if I'm given a formula to do it, I can do it. In fact, what the plaintiffs say in their brief and what their expert said below is, if the Court gives me the formula, I can do it. In that sense, the plaintiffs completely abdicated their burden of proving that they have a reliable methodology to calculate damages and impact in this case, that is, that there has been undervaluation. And you can imagine how a trial might proceed if what we have to do is have a jury supply the formula to the expert to apply. I don't understand how that defeats their claim for having it certified as a class, the fact that they have to come forward with a formula. Well, here's the thing. Wouldn't every plaintiff who complains about progressives' evaluation method have to come forward with a formula? Yes. So why shouldn't there be a class action? Because, Your Honor, if the formula to determine the value of a car, a total loss vehicle, if it requires you to take into account the pre-loss condition of that car, you have to know individually what condition was that car in and how does it adjust the valuation and so on. Well, in any class action, every plaintiff has to come forward with plaintiff-specific responses to what their condition is, what the damage is, the extent of the damage. That's every class action, isn't it? Absolutely, Your Honor. And if those individual issues predominate, if what a trial on the merits would look like are individual trials trying to determine, is this vehicle worth 15% less or 10% less or $100 less or $200 less than the valuation? Well, my complaint is about the evaluation method used by a progressive. And so if there's a determination that there's a problem with the evaluation method, that would apply to every plaintiff where that method was used. And then we're just down to talking about how much money they should have received for the total loss. Isn't that right? That's right, Judge Graves, but that is what the trial will be about because in any claim that the plaintiffs have, they have to prove to have liability and entitlement to damages that they were underpaid for their total loss vehicle. It's not enough for them to show under any theory. Rule 23 requirements, your chief complaint right now is, is that these individual damage claims predominate sufficient that it defeats the determination that they should be certified as a claim. Yes, Your Honor. The only exception I would take to that is it's not just a damages issue. There's no liability if there's no undervaluation. Take, for example, the plaintiff's breach of contract. But you agreed in your brief that just if we looked at a liability class, that would exist here. If the simple question is whether or not your WCTL program conforms to 1892, it's a recognized industry source, that discrete legal question is very suitable, right? We have no dispute about that, Your Honor. Okay, so if that is deserving of class-wide treatment, then what the district court said was, well, the rest is just a pretty simple math formula. Let's just take the very rankings that your appraisers gave it and run it in. We'll see if there's systematic undervaluation. Yeah, that is what the district court said, Your Honor. And here's why the district court was wrong for several reasons. First of all, under any of the claims that the plaintiffs have brought, the mere fact that if they were to conclude, if the court were to conclude, that our methodology does not comply with the statute because it's not generally accepted, the plaintiff still has to show that their claim was undervalued or there's no liability. Take, for example, the breach of contract claim. Progressive has only breached its contract to pay the actual cash value. If it did not pay the actual cash value— Well, let's even assume some of them will get more money than they deserve. That's not going to defeat the class. But my point, Your Honor, is that it's an essential requirement of liability and damages that you determine if the payment was undervalued. The second point, Your Honor— Well, the liability is established and you concede in your brief. The liability exists if the program is inconsistent, isn't an industry-recognized source. We do not concede that that's liability, Your Honor. We concede that that's a legal question that's common. But what we say is there would still be no breach of contract if, in fact, Progressive, even if it used an inappropriate methodology, happened to pay the actual cash value. There would be no breach of contract. And then would you just have a plaintiff who doesn't recover? Or somebody who may be eliminated before the case ever gets to trial based on responses to pretrial discovery interrogatory? I agree, Your Honor. That might establish lack of liability. But here's the important point. The important point is that what the plaintiff proposes and what the district court pointed to was you could simply take the plaintiff's proposed methodology, which is the National Auto Dealers Association value— Run your numbers through. And you can compare it mathematically. Or just, no, I mean, they're freestanding. They're independent. Just run your condition number against the Kelley Blue Book. But it's that last part, Your Honor, that there's no proof on. What the plaintiff's data expert said below was what you should do is just apply the NADA value and compare it to the amount Progressive paid, and the difference is a math formula. And that's true. But the NADA valuation doesn't adjust for condition. What the plaintiffs have said was, well, we can use your condition. Isn't it true your program doesn't address for condition? It's a freestanding issue. No. Ours does adjust for condition. But after the fact. Conditions don't determine the base value. Well, that's true, Your Honor. And neither do they in the NADA. After the fact is part of a single comprehensive methodology. And what the plaintiffs haven't shown— That's not what the district court found. That's what you contend, but it seems counterfactual, that over and over again the record seems to establish that you agree. Just like the Kelly Blue Book, just like NADA, your WCTL program is independent of the factors that are determining conditions. Your Honor, I disagree with what you're saying in terms of what the record shows, but let me explain why. Maybe it's just a nuance. It's a single methodology that takes part in two steps. The first step determines the base value. The second part step adjusts the condition. But they are related. And what the plaintiffs never showed and what the record doesn't show is whether we are comparing apples to apples when we look at the base values. Because we don't know, and the record has no evidence in it, how the NAD value is determined. In fact, the plaintiffs don't put in any evidence of the methodology. This case has been pending since November of 2011. There were 11 months of discussion. The only reason it's apples and oranges, though, is because you're contending that your program is proprietary. No one's ever argued that the NADA or the Kelly Blue Book aren't industry-recognized sources. No, no, but, Your Honor, the reason it may be apples and oranges is because the source of the information, what goes into the calculation. Into your program's calculation. Our program or NADA. We don't know if they're the same. So let me give you an example, Your Honor. The record contains at page 1413 of the record. You don't know if they're the same? You don't know what goes into an NADA calculation? Is that a secret? We know generally. I'm about to address that, Your Honor. All right. We don't know how it goes in. But here's what's in the record. On Record of Appeal, page 1413, is the frequently asked questions that go to NADA. And what they say is, the data sources used to determine used car values are actual auction and retail sales transactions, asking price information, as well as numerous macro and microeconomic factors. That's all we know. We don't know what micro and macroeconomic factors. I'm slightly apprehensive that they're going to get up and we're going to basically recreate the hearing that occurred below, with virtually no reference to case law. In the few minutes you've got left, what is your best case that there was a class certification error, abuse of discretion here? Your Honor, I would point first and foremost to the Comcast decision. In Comcast, the Supreme Court said at page 1443 that it's flawed logic to say that at the class certification stage, any method of measurement is acceptable so long as it can be applied class-wide no matter how arbitrary. In fact, the Supreme Court said that would deem it to be a nullity. What you need to have below is rigorous proof of how you would apply the methodology. Do you have any post-Comcast circuit authority from our court you're relying on? Yes or no? Post-Comcast? I'd have to check, Your Honor. Well, we've issued at least two cases. I'm sure you've read them. The Deepwater Horizon and just last month, what, the Ludlow case. Yes, Your Honor. Both those cases, when I looked at them, said Comcast is a mismatch case. This isn't a mismatch argument. You aren't saying they had multiple theories of liability that aren't consistent with the damages. You're saying we just can't figure out the damages. This is a fuzziness case. No, Your Honor. What I'm saying is that the plaintiffs have not carried their burden  For example, the plaintiff's expert below was asked during the hearing, and this is cited in our brief, page 1935 of the Record of Appeal, are you aware, are you specifically aware of how NADA arrives at car values? No. Is it fair to say you don't know what the numbers in NADA presents, how they're derived? That's fair. She was then asked whether she's done any work to apply her theory. She said no. I want to get back to the law. If you don't have a post-Comcast fifth circuit case you're relying on, what's a post-Comcast any circuit case you're relying on? Because I've read Comcast and it's pretty dissimilar to this, maybe not advantaging them or you, but it's led to a huge amount of ink. A lot of courts are disagreeing as to how to interpret it. What's your best circuit level authority that there was reversible error here? Your Honor, I think what I would point to, and when I come back up I can tell you those specific cases, but I want to make it very clear. On Comcast, even though the actual finding in that case was a mismatch case, what Justice Scalia explained time and again was that Rule 23 is not a pleading requirement. It is a requirement that obligates the plaintiffs to come forward at the class certification stage and prove they have a measurable common way. Here the plaintiffs have not done that. In fact, what they have said over and over again in their briefs is if the court supplies them with a way to do it, then they can proceed. The district court's obligation in the class certification context was to rigorously analyze whether plaintiffs had met their burden. They haven't met their burden here because they didn't present anything.  .  Oh, . sales within a region for that type of vehicle and therefore we have a more robust and probably more likely analysis of what reconditioned value is. But they both purport to provide a base reconditioned dealership condition value. NADA's value, Kelly Blue Book's base value. And what progressive does in a completely separate analysis is it reduces the condition to a single numerical factor which it then applies to a percentage based on a database that is entirely different from the database that derives that base value. So you're saying your methodology would accept that single condition? Correct. You would accept that? Correct. Entirely independent, therefore you would just apply it to the NADA or the Kelly Blue Book? And I can show you the example and it's the example that the court cited in its opinion with respect to the Slade evaluation. Slade had a WCTL base value of $6,438. She had an actual reconditioned value of $8,725. Both of those numbers, by the way, are in Progressive's records. Now, if you take Progressive's methodology, she got a 2.5 condition rating of good which she does not contest and that reduction was $1,606 or minus 18.41% for a final WCTL payment to her of $5,215.30. Now, if you apply that same secondary part of the analysis to the reconditioned NADA value is then $7,183.83. The final piece of the analysis determining the underpayment is a simple matter of subtracting the WCTL number paid to Ms. Slade of $5,213.30 and the NADA number of $7,183.83. That gives us $1,903.53. That's not a statistical model. That is a solid damages number derived from the defendant's own data. The plaintiff doesn't have to provide a single piece of paper. The plaintiff doesn't have to answer a single interrogatory and the court need not take any further steps than tell the expert whether or not that is a proper method to calculate loss. That is whether or not you can substitute the base value of NADA as required by the statute for the illicit program that they used. Now, they're going to come back and say, well, plaintiffs complain about that numerical scale, so how can plaintiffs say we can use that? Again, plaintiffs don't complain about the numerical scale. We complain about how they use it. And that comes to another claim that the court analyzed, and that's where the court came into the, well, what if we adjust the number? We don't contest the number. We contest the use of that number, and there are two problems with it. One is, let's say they prevail on saying that their system actually is a generally recognized used motor vehicle source. I don't think they're going to, but let's say that they do. There's still another problem with their system, and that is that the Louisiana Third Circuit, affirmed by the Louisiana Supreme Court, said that it is a violation of the insurance statute 17, I'm sorry, 1892. It's a violation of that statute if you adjust for condition where you don't know the condition of your comparables. So even if they are an allowed methodology, they're adjusting for condition without knowing the condition of the comparables. So the court could knock out the conditioning based on that statute if the court were to uphold progressives' position with respect to whether or not they are in fact a used motor vehicle industry source. So that's another claim, and that's another one that can be analyzed. But again, the complaint is with how the numbers are being used. There's another problem that we have advanced, and that is that the use of a 3.0 benchmark is improper. To say that we're going to reduce by a percentage if you're under 3.0 is improper because what you are charging the plaintiff for is dealer prep. Because the typical car on the road is at 2.82. So if my plaintiff wants to go and buy her exact 2.82 typical car, she's going to have to buy a 3.0 car. She's going to have to go to the dealership, and she's going to have to pay that dealer prep money. And that's if her car is in good, standard, typical condition. So we submit that if that claim is valid, then what you would do is simply adjust the benchmark number downwards and adjust the percentage accordingly. That's another simple mathematical function. That's a claim that the court found could be dealt with. But in any of those... Slow down a little bit, because in a way, the more you spin out different theories of liability, the more you're walking into a Comcast problem. There are only three theories of liability, Your Honor, and it's not a Comcast problem. I would suggest to Your Honors that Comcast is Hurricane Katrina, and we are a gentle summer breeze. There is no comparison between the complex econometric false positive methodologies advanced in Comcast, which incidentally were contested by different experts. Not the case here. There were dauber challenges raised. Not the case here. This is a simple mathematical, not a statistical modeling, simple mathematical approach to establish that. It is simple for my math-compromised mind when you say, I'm just looking at a liability class because 1892 is inconsistent with this proprietary system. That's fairly... I can understand that. And it looks like you say Slade accepts her number, conditions are irrelevant, everyone agrees, conditions kick in. That's fairly simple. But once you start saying, plus we've got three other theories of liability, and they would lead to different damages amounts in each particular case, then I don't think in sort of the confused law that's post-Comcast as to what it means and how broadly it disfavors classes where damages calculations will predominate that you're as home-free. Again, I would submit to Your Honors that this is not a difficult damage calculation. But wait a minute. Counsel, one second. This, I'm agreeing, it's simple as you spent the first 15 minutes describing. But in the last two minutes, you're elaborating different theories of liability that at least my brain doesn't comprehend as so simple. Your Honor, they're not inconsistent. And it's a theory that, first of all, this court could decline to certify, as was the case in the McManus versus, I think, McManus. But you didn't ask us to do that. I didn't, Your Honor. Actually, in my briefs, I did cite to McManus and say that that's one thing that the court could do. Okay. My mistake. But there are three distinct claims. Okay. They either could operate collectively or they could operate independently. Just being plain English, the first distinct claim is the 1892 compatibility, which I would sort of think, if other states must have this same industry source, Progressive would have run into somewhere. Is it your understanding there's no law? Actually, Your Honor, it's my understanding that there are laws in other states. No, but is there any litigation that's developed where people have challenged, under similar industry source, their proprietary system? This is the first case anywhere?  Okay, so that distinct claim is pretty clear, and you said there are three. I'd love it if you could very succinctly say what the two other liability claims are. Certainly, Your Honor. The second one is that even if the WCTL is compliant with Section B-5 of 1892, under Hayes versus Allstate, they're not allowed to condition if they don't know the value of their comparables. Okay, and implicitly you're saying Kelley Blue Book does know the value of each comparable? No, what Kelley Blue Book says, this is why we would say that conditioning is improper in any circumstance, but what Kelley Blue Book at least says is we're talking about an ideal car, and we know it's an ideal car because we've looked at the entire market. If conditioning is improper in any sense, you do get to sort of absurd hypotheticals in terms of you would then say the insurer has to pay you if you've got a really messed up vehicle that you drive and gets totaled the exact same amount as if you drive off a lot with a very well-conditioned car and you get totaled. You're entitled to the same amount? Well, Your Honor, that's a question that the court actually properly passed on because it said that if you have to get to conditioning, we can handle it. However, when you don't know the condition of the comparables, that's exactly fair because the car that drove off the lot in their comparables could, as Judge Hike noted, be a piece of junk. And what's more, and again, this is a question we don't have a record on it because it's a merits question that the court said we don't have to get to, but if you're dealing with the junker car, Progressive doesn't change your premiums. They charge you the same if your car is a piece of junk or it's a nice car. They look at year and model and make. That's it. You've got a little bit of time. What's the third claim? The third claim, Your Honor, is the fraud dealing with where the benchmark is set. Again, that's how the system applies the number. It is not any problem with the number itself. And if you see what the court had to say about that, the problem is that the benchmark of 3.0, which is purportedly typical, is not typical. Eighty percent of cars are under that 3.0. You've got to deal with our precedent, which seems to say that handling a fraud claim in a class action like this, this kind of fraud claim, is not appropriate. It's not because it's a fraud claim that arises in the ambit of an insurance case where there's a duty of good faith and fair dealing, and it's a uniform misrepresentation. So that last claim is a fraud claim, and again, it's one that the court may determine is not certifiable. I pushed him on this, so same to you. What's your best post-Comcast case that you think would affirm the certification here? Your Honor, I would say it's Ludlow in its distinction of Comcast. However, none of those are really on point. I think that you actually have to look to pre-Comcast, and you have to look a ways back to Roper, because Roper is where we were dealing with a situation like this, and what this court said in Roper is it talked about when you're dealing with a negative value claim like this. Average loss here, according to their own documents, is $900 for the average person. That's what the court found. It's a finding that this The claims are relatively small, set even by the plaintiffs to average less than $100 each, and the question of law is one that applies alike to all. While it may be necessary to make individual fact determinations with respect to charges, if that question is reached, these will depend on objective criteria that can be organized by a computer, perhaps with some clerical assistance. It will not be necessary to hear evidence on each claim. Balancing the predominance question with the negative value issue and the fact that you can go to a computer and reach a formula. Okay. That is what we're dealing with here, and that is case law that survives Comcast. It's cited the need for negative value class actions. Thank you, Your Honor. Your Honors, with due respect to my brother at the bar, I think his argument establishes why it's important for a rigorous analysis that's tied to the record evidence. Let me just start in reverse order. On the fraud claim, while counsel continues to point to their fraud claim being a bad faith claim under the statute, that claim was dismissed by the district court in 2013. The only fraud claim that remains is a common law fraud claim, which does require individual reliance. In this record itself, there's testimony from one of the plaintiffs, Ms. Laurel Minix, that she doesn't even know if she read the document that they allege was a fraudulent. You got that. Move back up the ladder. Now, I thought it was very interesting for counsel to say that it's irrelevant that he doesn't know the methodology for how NADA or Kelly Blue Book compute their base value. Here's why that is wrong. As Your Honor pointed out, and you can see it on page 14 of the plaintiff's briefs, they have lots of different theories about how they might prevail in this case. And in fact, they make clear that one possibility is that the fact finder could throw out both Progressive's methodology for coming up with a base value and Progressive's methodology for adjusting for condition. And the question then becomes, what do the plaintiffs suggest we do instead? And the answer is, they don't suggest anything. Judge Owen, you? We just got here today saying they will accept unconditionally your numbers on the adjustment for condition, assuming we held them to that. And we said, if it's anything other than that, you're out. But if we hold you to, you have to use Progressive's conditioning numbers, then where are we? The problem, Your Honor, is the issue here is not simply determining what condition is the vehicle in. That's what they're saying they'll concede. If we said the vehicle was in fair condition, they'll say, okay, we'll accept it's fair. The question, the difficult question is, by how much do you change the base value in light of the condition? And knowing how the base values were first computed, it's necessary to know what formula do you use to then apply the condition of the vehicle to make the adjustment? You can't just simply say, well, if it was a 3% reduction based on Progressive's methodology, it must be. Do you know how the WTCL base values are calculated? Yes, we do, Your Honor. The work center total loss base value is calculated. So the district court can come up with some valuation, it seems to me, to reconcile WTCL with NIDA and KBB and say, okay, we're going to go with something and then require the plans to accept your condition, and then you're in a mathematical calculation. Your Honor, if what you're saying is in theory it could be done, the answer is absolutely yes. But what Comcast and Walmart have held time and again now, and this circuit has held, for example, Your Honor, in the Madison case, where the court said you cannot use the figure it out as we go along approach, what has to happen is... If you're not certified now, worry later. We know that. So the problem is, while mathematically it could be done, it hasn't been done. We have no idea. Dr. Hassel, the plaintiff's expert, testified below, she doesn't know how NADA or Kelley Blue Book come up with their numbers. The record shows that Kelley Blue Book takes into account dealer profit, cost of advertising. That's not taken into account by work center total loss. How do you adjust for condition a dealer profit number? Cost of advertising. Other cost of business, which is taken into account by Kelley Blue Book. So in the court below, Mr. Murray asked his expert, is it fair to say that if the court provides you with instructions on how to take the objective condition factors into account in adjusting NADA values, you can design a database that will allow you to provide that adjustment. She said yes. Doesn't that come down to whether NADA and ABB are what the statute requires, and if the district court says they are? It doesn't come down to that, Judge Owen, because simply saying that they comply with the statute doesn't tell you whether it's a fair and reliable methodology to adjust their base values the same way you adjust the WCTL values. They have to be adjusted for condition, and it may be that someone could come up with a mathematical formula that works, but it's the plaintiff's obligation now to come forward with a methodology that they can show is reliable. And all they're saying now is, we'll take the methodology whether it's reliable or not. That's not complying with the burden that they have. That's not representing the future interest of the defense. Counsel, do you agree or disagree that Kelley Blue Book and NADA would be a fairly reliable source for determining what it's going to cost you to replace the vehicle that suffered a total loss? I do not agree that in all instances it would be, Your Honor. Kelley Blue Book and NADA vary in its reliability. They oftentimes will value vehicles based on dealer asking prices without taking into account negotiation that occurs when sales actually occur. The record reveals, this is the testimony of Mr. Retton in the record. So most consumers pay a lot less than what NADA or Kelley Blue Book says a car's value is? Some pay less, some pay more. We just don't know. It varies, Your Honor. The record shows that the reason Progressive switched from using an EDA to using work center total loss was because work center total loss was more reliable and more accurate because it uses a methodology that depends More accurate in determining what replacement value was or more accurate in determining what we were going to pay for a loss? More accurate in determining the actual cash value of a vehicle, which is what the contract we have with our insurance requires us to pay. Well, I mean, it seems to me that's something you can argue with the district court about, which of these conforms with the statute in the contract. But once he picks one, I don't understand why, if they accept your adjustment, you just apply the adjustment to whatever value the district court says is appropriate. Because we don't know if it's reliable to adjust the value of NADA simply by using the condition adjustment that's used in the work center total loss. It'd be, for example, like if instead, and I tried to come up with an analogy about this, and I apologize if I've gotten a bad one, but it'd be like if the statute said from now on you have to pay using a different currency, all right? And so we're going to take Progressive's dollar amounts and now we're going to pay in a different currency and just make the adjustment on condition using the different currency. But I'm not going to tell you what the currency is. How would you know the adjustment is reliable? You have to know the methodology, what goes into calculating NADA's base value before you know if the adjustment you want to make to it is reliable for all these absent class members. Well, we could read man to district court and say if you find that it's, find out what this is, and if it turns out that all that you have to do is subtract your numbers from that number, then it's appropriate to certify. That would be an appropriate response to reverse and with instructions for the court to proceed. But I would note, Your Honor, that we have had 11 months of discovery. This case has been pending for four years now. There's been two discovery extensions. There's been three months of expert discovery. The time to come forward with this evidence has come and gone. And the plaintiffs made an intentional choice not to, they didn't send a single document request or a 30B6 notice to NADA, Kelley Blue Book. They didn't collect any data about how it works. Did you come up with a circuit, post-Comcast circuit case? Yes, Your Honor. So the Mattis, I would point to two, well, post-Comcast, I would point to the in-ray rail freight surcharge case, Your Honor, which is out of the D.C. Circuit, which we think is helpful. And in addition, this is a post-Walmart case. We would point again to the Madison decision. Again, Your Honor, I understand, I understand that there's a question about whether Comcast is just about fit. But Judge Scalia's decision makes very clear that it's not only about that. It's about making sure that there's a reliable methodology that's been put forward, as opposed to just some methodology. Thank you. That concludes the arguments for today. Thank you, Your Honor. Court will stand in recess until tomorrow morning.